# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**JOHN R. MARTZ,**

        **Plaintiff,**

**-vs-**                               **Case No. 6:08-cv-1705-Orl-28DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested. Doc. No. 20.

For the reasons that follow, the decision of the Commissioner is **AFFIRMED.**

### *I. BACKGROUND*

**A.    Procedural History**

Plaintiff filed for a period of disability, DIB and SSI benefits on April 11, 2005, alleging an onset of disability on August 7, 2004, due to lupus, fibromyalgia, and rheumatoid arthritis. R. 62-66, 70. His application was denied initially and upon reconsideration. R. 44-45, 55-57. Plaintiff

requested a hearing, which was held on April 19, 2007, before Administrative Law Judge James R. Russell (hereinafter referred to as "ALJ"). R. 259. During the hearing, the ALJ stated that he would send Plaintiff for a mental health consultative examination, which he requested on May 21, 2007 (R. 259), and Plaintiff was evaluated on August 14, 2007. R. 260. In a decision dated December 3, 2007, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 17-23. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 5-6. The Appeals Council denied Plaintiff's request on July 31, 2008. R. 5-6. Plaintiff filed this action for judicial review on October 6, 2008. Doc. No. 1.

### B. Medical History and Findings Summary

Plaintiff was born in 1964 and was 40 years old on his alleged onset of disability date; he was 43 years old at the time of the ALJ's decision. R. 67. Plaintiff attended high school through the eleventh grade[1] (R. 296-97, 311-12), and had past relevant work as an electrician and a mechanic. R. 71-72, 74.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of lupus, fibromyalgia, diffuse disease of connective tissue, and rheumatoid arthritis. R. 24-25, 70. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from mild degenerative disc disease, fibromyalgia, diffuse connective tissue disease, rheumatoid arthritis, mild changes in the left shoulder, and misalignment of the fingers, which were "severe" medically determinable impairments, but not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 19.

---

[1] Plaintiff indicated in a disability report of May 17, 2005 that he completed 12th grade (R. 74), but he explained to the consulting psychologist that he attended 12th grade but did not pass English, so he did not receive a diploma. R. 219. When the ALJ questioned the inconsistency, Plaintiff said again that he did not pass twelfth grade, and admitted he might not have understood the question on the disability report. R. 311-12.

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a full range of sedentary work. R. 19. In making this determination, the ALJ found that Plaintiff's allegations concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. R. 21. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 22. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and concluded that Plaintiff could perform work existing in significant numbers in the national economy. R. 23. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 23.

Plaintiff now asserts five points of error. First, he argues that the ALJ erred by relying upon the grids, rather than obtaining vocational expert (VE) testimony, because Plaintiff suffered non-exertional impairments. Second, he claims the ALJ erred by finding he had the RFC to perform sedentary work contrary to his treating doctor's statement. Third, Plaintiff contends the ALJ erred by improperly applying the pain standard. Fourth, he asserts that the ALJ erred in failing to consider Plaintiff's impairments in combination. Fifth, Plaintiff claims the ALJ erred in failing to consider the report of Plaintiff's sister in assessing his RFC. All issues are addressed, although not in the order presented by Plaintiff. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely

create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

### *III. ISSUES AND ANALYSIS*

### A. RFC and the treating physician's opinion; combination of impairments

Plaintiff claims that the ALJ should not have found him able to perform sedentary work in light of the assessment by Dr. Perry, his treating physician, which limited Plaintiff to sitting for only one hour and standing/walking for *no* amount of time in an eight-hour day. R. 188-92. The Commissioner contends the ALJ properly gave little weight to this assessment because it was completely conclusory.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.

42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled. *Id.*, 985 F.2d at 534.

The ALJ discounted Dr. Perry's July 22, 2005 medical source assessment with the following reasoning:

> Dr. Russell Perry completed a medical source statement on July 22, 2005. Dr. Perry indicated the claimant could lift and carry up to 20 pounds occasionally due to RA, DJD and mixed connective tissue disorder. The claimant could sit one hour and stand/walk for no amount of time in an eight hour day. The claimant could balance but was precluded from all other postural activities. He was limited in the use of his hands.
>
> Follow up notes from Dr. Perry between October 2005 and April 2007 showed the claimant's symptoms were stable on January 30, 2006. In February and April 2007, the claimant's GERD and hypertension were controlled with medications.
>
> On May 24, 2005, treatment notes from Sanjiv Kapil showed symptoms suggesting polyarticular joint involvement and [rheumatoid arthritis] vs. juvenile [rheumatoid arthritis] vs. lupus. On August 8, 2005, x-rays showed mild degenerative changes at C4-5, C5-6, and L5-S1. There was no inflammatory arthritis of the hands, and images of the right shoulder were normal.
>
> The claimant underwent consultative psychological evaluations with Dr. Malcolm Graham and Dr. Lisa Merilson on November 2, 2005 and August 17, 2007, respectively. Both evaluations showed no diagnosis. The claimant was balanced and generally well adjusted, and had no problems with attention, concentration, or memory.
>
> \* \* \*
>
> Consideration was given to the treating physician's statement [of] Dr. Perry indicating the claimant could lift up to 20 pounds, sit for one hour, and sit/walk for no amount of time in an eight hour day. . . . Dr. Perry's conclusion is neither buttressed, nor explained by any laboratory results or clinical findings in the file, is inconsistent with the opinions of state agency consultants, is not accompanied by thorough and contemporaneous notes, and is inconsistent with the other evidence of record.

> Non-examining doctors from the State agency assessed the claimant's physical ability to perform work-related activities, in light of the medical evidence of record, and concluded that the claimant had the [RFC] to perform a range of sedentary to light level work. These opinions have been considered and weighed, in accordance with the provisions of 20 CFR 404.1527(f) and Social Security Ruling 96-6p. Following the guidelines set out in the regulations and rulings, the weight of the medical evidence or record demonstrated that the claimant has severe impairments that less significantly limit work activity. Thus, the aforementioned opinions are contradicted by the weight of the evidence of record.

R. 21- 22. As the Commissioner acknowledges, the ALJ failed to discuss Dr. Perry's April 2007 assessment, but argues it was harmless error because the 2007 assessment was so extreme it was intended to preclude all work; it was significantly more restrictive than the 2005 assessment which the ALJ did consider, and it was unlikely to have changed his decision. Additionally, the Commissioner argues, there was no evidence that Plaintiff's conditions worsened between the two assessments.

In the 2007 assessment, Dr. Perry concluded that Plaintiff could: rarely lift 10 pounds and never lift 20 pounds; could sit for only 10 minutes at one time and stand for five minutes at one time for a total of less than two hours; must take 30 minute unscheduled breaks every 10 minutes during the work day[2] and be able to shift positions at will; could only climb stairs occasionally; and did not have the ability to twist stoop, crouch/squat, or climb ladders; limited reaching capabilities; limited ability to grasp, turn, or twist objects; limited use of his right-hand fingers for fine manipulations; and no use of his left-hand fingers for fine manipulations; Plaintiff was "incapable of even low stress jobs." R. 141-43. Plaintiff could rarely look down, turn his head right or left, or look up, and could

---

[2]That is, Plaintiff would need to rest 30 minutes after each ten minutes of working.

only occasionally hold his head in a static position in Dr. Perry's opinion. R. 143. It is true that Dr. Perry's 2007 assessment suffers from the same flaws[3] as the 2005 assessment.

The ALJ rejected Dr. Perry's 2005 assessment because it was neither buttressed nor explained by any laboratory results or clinical findings in the file, and inconsistent with the opinion of state agency consultants, there was a lack of contemporaneous notes, and it was inconsistent with other evidence in the record. R. 22. Plaintiff saw Dr. Caldwell who told him that he had juvenile rheumatoid arthritis at 16 years of age; he was followed by Dr. Cauldwell until age 25. R. 164, 177.

Plaintiff saw Dr. Kohen, a rheumatologist from February to September 2003 (one year prior to his alleged onset date of August 7, 2004); Dr. Kohen diagnosed Plaintiff with inflammatory polyarthralgias and degenerative joint disease. R. 152-65. Plaintiff did not see another rheumatologist[4] for his arthritis-related condition for two years, *i.e.*, until Dr. Perry referred him to Dr. Kapil, who evaluated Plaintiff on May 24, 2005. R. 205-08. Dr. Kapil's examination of Plaintiff revealed tenderness in the shoulders, knees, and joints, and decreased range of motion at hips, with no swelling or tenderness in other joints, wrists, or elbows. R. 207.

Dr. Kapil's treatment notes indicate that he was undecided about the cause of Plaintiff's condition, and he ordered extensive testing before deciding on a diagnosis:

> The patient's symptoms are suggestive of polyarticular joint involvement. The patient to have labs to evaluate this further. The patient to have C-reactive protein, ANA, anti-SSA, anti-SSB, anti-Smith, anti-RNP, anti-dsDNA, hepatitis B surface antigen, C3, C4, serum protein electrophoresis with fixation, CBC, CMP, and urinalysis. The patient to have x-rays of the hands looking for erosions, x-rays of the shoulders looking for arthritis, x-rays of the C spine and L spine looking for spondylosis and sacroilitis. The patient's condition is suggestive of possibly rheumatoid arthritis

---

[3]As the Commissioner points out, Dr. Perry added a diagnosis of "systemic lupus," even though this diagnosis does not appear in the July 2005 assessment and no such diagnosis is in his treatment notes. R. 140.

[4]There is a reference in Dr. Perry's treatment notes to "previously [with] Dr. Lurterio" but it is not clear whether he is a rheumatologist and there are no treatment records from a doctor by that name.

versus juvenile rheumatoid arthritis versus lupus, although the latter seems less likely.

The patient's symptoms of fibromyalgia may be secondary to the above condition. The patient to return for follow up in about four to six weeks at which point we will review the above data and make further recommendations.

R. 207-08. At the May 2005 appointment, Dr. Kapil ordered the x-rays and blood tests, which were completed in June 2005. The state agency reviewing physician, Dr. Ravipati, Internal Medicine, did a thorough job of analyzing the objective evidence from June 2005 which led him to opine that Plaintiff was capable of sedentary work:

> This is a 41-year old male alleging disability from possible rheumatoid arthritis since age 16. He seemed to have possible lupus in 2003. He has been taking prednisone on intermittent fashion. X-ray of the C-spine showing mild DJD only. X-ray of the left shoulder also showing mild DJD. X-ray of the right shoulder is negative. X-ray of the hands is negative for any significant inflammatory arthritis. X-rays of the LS spine is showing mild degenerative disc disease only. Even though RFC filled out by the treating source on 7/22 showing less than sedentary work capacity, I do not believe that RFC supported by the exams and diagnostic test. There is also mention of marked decrease in grip (2/5) at one point, however, that is also not supported by the physical exams and diagnostic test.
>
> As per the rheumatology evaluation of May 25, 2005, there is no evidence of active synovitis of the hands or wrist. There is moderate decreased range of motion at the shoulders, knees and MTP joints. There is no evidence of any assisted device use. The recent exams are showing normal C-reactive protein, negative rheumatoid factor, negative ANA even though Sjogren antibodies is somewhat elevated. Therefore taking overall condition into consideration, including possible inflammatory arthritis of undetermined specific diagnosis of moderate-to-marked reductions are given under 1A, 1B, 1C and 1F [limitations on RFC assessment]. I do not believe the severity of the inflammation supports total disability at this time.

R. 212-13. The reports of the x-rays ordered by Dr. Kapil, to which Dr. Ravipati refers, are included in the record. R. 200-03. The cervical spine x-ray showed mild degenerative changes. R. 200. The x-ray of the left shoulder showed degenerative changes of the shoulder joint, but no signs to suggest an inflammatory arthritis; the right shoulder was normal. R. 201. The x-ray of the lumbar spine showed minimal osteophytes and mild narrowing at L4/5, and narrowing of the disc space noted at

L5 and S1 levels; the x-ray of the sacroiliac joints was normal. R. 202. X-rays of the hands showed no evidence of inflammatory arthritis; flexion deformities of both fifth fingers were of chronic duration. R. 203. (A chest x-ray ordered by Dr. Perry around the same time was also normal. R. 179.)

Dr. Ravipati opined that Plaintiff's symptoms were attributable to a medically determinable impairment, but he felt Plaintiff was only partially credible, based upon the rheumatology exam of May 24, 2005 and multiple normal x-rays, thus the severity and/or duration were disproportionate to the expected duration for Plaintiff's medically determinable impairment. R. 216. He discounted Dr. Perry's report: "Even though there is a MSS source statement on the RFC filled out by the treating source showing a marked decrease in [his] capacity those statements and impressions are not supported by the physical exams and x-ray findings. Therefore marked reductions given under 1A, 1B instead of allowing him for total disability under any specific listing." R. 217.

The opinion of the other reviewing physician, Dr. Michael Millard, was similar to Dr. Ravipati's: normal chest x-ray, extremities showed no cyanosis or edema, full range of motion lumbar spine, gait antalgic due to joint pain, station normal, heel to toe ok, no assistive device necessary, grip strength 3+/5 bilaterally, dexterity mildly impaired, lumbar spine and cervical spine x-ray shows mild DJD, shoulder x-ray normal, hand x-ray shows no evidence of arthritis; the current medical evidence of record and activities of daily living did not support the severity of alleged impairment. R. 181, 185.

The ALJ was entitled to, and did, rely on the reviewing physician's opinions. R. 22 (citing Ex. 5F - 180-87; 9F - R. 212-18). Dr. Ravipati's opinion was based on the objective testing and physical examination of the rheumatologist Dr. Kapil, who Plaintiff only saw one more time in June

2005 to discuss the serology results and Plaintiff's x-rays, virtually all of which he noted were within normal limits. R. 197. Dr. Kapil noted:

> The patient's arthritis appears [illegible]. Reviewed lumbar x-ray with patient. The serology is partially unexpected due to negative ANA[5] [antinuclear antibody test] and positive anti-SM [Smith antibodies] and SSB [Sjogrens Anitbodies (SSB)] with zero sjogrens [Sjogrens Anitbodies (SSA)] suggestive of *connective tissue disease*.

R. 197 (emphasis added); R. 194-95 (blood test results). He recommended changing Plaintiff to a different medication MTX, after discussing the risks to liver, with zero alcohol allowed; reviewed other options with him as well. R. 197. Plaintiff was to follow up with primary care doctor/hematology for increased Hgb. R. 197.

Plaintiff did not return to Dr. Kapil, the rheumatologist, for further treatment or final diagnosis of what Dr. Kapil identified as "suggestive of connective tissue disease." R. 197. Instead, Plaintiff only saw only his primary care physician, Dr. Perry, from late 2005 to 2007. Plaintiff had previously decided to stop seeing Dr. Kohen as well, because the medications he prescribed "made him feel worse" and increased side effects. R. 167. For this reason, Plaintiff's arguments that the ALJ failed to consider the combination of Plaintiff's conditions ring hollow. The suggested diagnosis of connective tissue disease and Plaintiff's symptoms of fibromyalgia, which Dr. Kapil thought were "secondary" to the connective tissue disease were not followed up through Plaintiff's own volition; Plaintiff's lupus condition was suspect in light of the normal ANA[6] and other antibody tests results and physical examination by Dr. Kapil. R. 197 ("The serology is partially unexpected due to negative

---

[5]If the ANA test comes back negative, it is considered a normal result, and it is very good evidence against lupus as an explanation for the symptoms. *See website of Lupus Foundation of America: http*://lupus.org/webmodules/webarticlesnet/templates/new_empty.aspx?articleid=402&zoneid=76. Plaintiff's test was negative, or a normal result. Dr. Perry fails to cite or attach the test that points to a diagnosis of Lupus; this would be critical in light of Dr. Kapil's notations that the ANA was negative.

[6]Plaintiff's rheumatoid factor was also normal, but Dr. Kapil did not comment about it in the treatment notes. R 194.

-11-

ANA"); R. 207 (lupus "seems less likely"). Dr. Kapil's diagnosis of connective tissue disease (or fibromyalgia) does not figure in the diagnoses listed by Dr. Perry, a non-specialist, on the April 2007 RFC assessment that Plaintiff suffered from "systemic lupus and rheumatoid arthritis." R. 140.

In addition, Dr. Perry's treatment notes are very sparse. In January 2006, under "chief complaint" he writes: "Sx [symptoms] stable" and under impression/diagnosis: "R.A. [rheumatoid arthritis]," with no description whatsoever of Plaintiff's physical issues. R. 244. The notes from May and August 2006 report Plaintiff's complaints that he feels his low back pain is getting worse. R. 242-43. In February 2007, Dr. Perry lists "Raynaud's - hands[7]." In April 2007, the only comments are "hypertension - controlled" and "borderline blood sugar," and no complaints relating to joint or tissue problems at all. R. 239. There are no subsequent treatment records. Dr. Perry completed his RFC assessment for Plaintiff on April 16, 2007 opining that Plaintiff could not walk at all, could stand only five minutes, and could sit only ten minutes; he opined that Plaintiff was incapable of even "low stress" jobs. R. 141.

Although Dr. Ravipati and Dr. Millard were non-examining physicians, their reports – in a detailed fashion – were based on the medical evidence of record, including normal x-rays and blood tests, which did not support Dr. Perry's restrictive limitations on Plaintiff. Accordingly, good cause existed for the ALJ's failure to credit Dr. Perry's RFC assessments or his opinion.

### B. Pain and credibility

Plaintiff asserts that the ALJ erred in evaluating his pain due to rheumatoid arthritis, mild degenerative disc disease, fibromyalgia, diffuse connective tissue disease, mild changes in left shoulder, and misalignment of the fingers, conditions that the ALJ found to be "severe" impairments.

---

[7]Raynaud's syndrome characterized by cyanosis of the fingers due to arterial and arteriolar contraction, caused by cold or emotion. Stedman's Medical Dictionary (28th ed. 2006).

He also argues that the ALJ erred by finding his subjective complaints credible only to the extent he is limited to sedentary work. He contends that the medical records and third-party statement of Plaintiff's sister demonstrate his credibility and that the ALJ failed to provide adequate and specific reasons for discrediting his complaints.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (*quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 20. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). Moreover, the ALJ complied with those standards.

He obviously determined that plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination. In that respect, immediately after discussing Plaintiff's RFC, the ALJ stated:

> The claimant testified that he was terminated in August 2004 because he was unable to do his job. He reported constant, extreme pain and fatigue in the back, neck, shoulders. The claimant testified that many days, he is unable to walk at all due to RA, lupus, and fibromyalgia. The pain is most intense in the low back, legs, and neck. The claimant testified that his condition has never stabilized. The claimant reported 7-8 bad days per month. The claimant reported no difficulties with mental health. His medication causes drowsiness.
>
> The claimant testified that he can walk 200 feet, stand less than five minutes, sit 15 minutes, and lift 15 pounds. He is allegedly unable to bend, kneel, or squat. The claimant watches television during the day. He described difficulty putting on shirts and wearing shoes and socks. The claimant can make himself lunch and protein shakes.
>
> The longitudinal medical evidence of record does not fully support the claimant's allegation of disability. Treatment notes from Senior Health Care Volusia on October 14, 2004 indicate the claimant was laid off, among [sic] with many others, by his employer. Physical examination was within normal limits, and the claimant reported feeling better.
>
> * * * [Portions cited above in Section IIIA]
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> The claimant testified that he stopped working due to his impairments, but indicated to Dr. Perry that he was laid off due to a company-wide reduction in force. The claimant reported that his conditions have never been stable, but Dr. Perry noted stable symptoms in January 2006. The claimant described severe back pain, but objective evidence showed only mild degenerative changes of the cervical and lumbar spine. Testing also showed no swelling of the hands, wrists, and elbows, and 5/5 power in

> the upper and lower extremities. The testimony of the claimant is not fully credible concerning the severity of his symptoms and the extent of his limitations. Neither the severity nor the extent is supported by the objective medical evidence of record.
>
> * * *
>
> In determining the claimant's residual functional capacity, the undersigned finds the claimant credible to the extent he would experience discomfort with heavy lifting, or prolonged periods of walking or standing. The residual functional capacity was accordingly reduced to accommodate those limitations.

R. 21-22.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

In this case, the ALJ offered specific reasons for discrediting Plaintiff's subjective complaints. Plaintiff misrepresented that he stopped working due to his impairments, but told medical providers and stated in the disability reports that he was laid off. R. 103, 132, 167. About two months after his alleged onset date, in October 2004, he reported that he felt no need to see Dr. Kohen, and he was feeling better. R. 167. He also told the ALJ at the hearing that his condition had not stabilized, but the entirety of Dr. Perry's January 2006 treatment notes were that Plaintiff's "symptoms stable." R.244. Plaintiff's severe back pain were contradicted by x-rays showing only mild degenerative changes of the cervical and lumbar spine. R. 200-02. Other x-rays and examinations reported no swelling of the hands, wrists, and elbows, and 5/5 power in the upper and lower extremities. R. 207. These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929.

Plaintiff contends that the ALJ erred in failing to consider the third-party report of Ms. Martz, Plaintiff's sister, regarding his condition. Ms. Martz reported that Plaintiff was debilitated due to joint stiffness, pain, and fatigue, but could perform chores such as folding clothes, taking out the trash, watering plants, preparing meals for himself, and spent most of his time reading (R. 124-32), varies little from Plaintiff's own testimony which the ALJ properly discounted. Thus, the ALJ's finding that Plaintiff's testimony was not fully credible concerning the severity of his symptoms and the extent of his limitations was based on substantial evidence.

### C. Application of the grids rather than use of VE

Plaintiff claims that because he suffered from fibromyalgia, rheumatoid arthritis, lupus, diffused connective tissue disease, as well as shoulder and finger problems, he had nonexertional limitations, precluding the application of the grids and requiring VE testimony as to whether he could perform other work in the national economy.

Once the ALJ finds that a claimant cannot return to his prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy. *Foote*, 67 F.3d at 1558. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the "grids." *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a VE. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

Plaintiff argues that based on Dr. Perry's RFC assessment, Plaintiff had substantial limitations in lifting, standing, walking, and sitting, as well as postural limitations regarding climbing, balancing, stooping, kneeling, crouching, and crawling. R. 140-44, 188-92 (Perry); R 212-17 (Ravipati)[8]. Plaintiff points to Dr. Perry's opinion that Plaintiff would be unable to stoop, which would erode the sedentary occupational base. Doc. No. 18 at 17. The ALJ clearly stated that he rejected Dr. Perry's assessment in reliance on the assessments by the state agency reviewing physicians, Dr. Ravipati and Dr. Millard. R. 21-22. As Plaintiff readily admits, Dr. Ravipati's opinion that Plaintiff would be limited in stooping to only "occasionally" would leave the sedentary occupational basis "virtually intact." Plaintiff contends that Dr. Perry and Dr. Ravipati imposed manipulative restrictions on reaching and handling (R. 214); however, Dr. Millard imposed no manipulative limitations and the

---

[8]Plaintiff cites also the report of the psychological consulting examiner, which has no bearing on Plaintiff's functional limitations, other than re-stating his complaints to her. R. 264.

ALJ was entitled to rely on his opinion since it was also the basis for rejecting Dr. Perry's assessment. R. 183.

In this case, the ALJ considered Plaintiff's physical impairments, including fibromyalgia, rheumatoid arthritis, lupus, diffused connective tissue disease, as well as shoulder and finger problems, and the resulting pain, and properly assigned an RFC for sedentary work. The ALJ found Plaintiff "credible to the extent he would experience discomfort with heavy lifting, or prolonged periods of walking or standing" and adjusted Plaintiff's RFC accordingly to accommodate those limitations. R. 22. The ALJ further specifically found that Plaintiff's had the capacity for the full range of sedentary work, and did not find that capacity had been compromised by any nonexertional limitations. R. 19, 23. Because Plaintiff could perform unlimited types of work at a sedentary level, it was unnecessary to call a VE to establish whether he could perform work existing in the national economy. *See Foote*, 67 F.3d at 1559. Accordingly, the ALJ was justified in his reliance upon the grids. *See id.*

## *IV. CONCLUSION*

The record in this case shows that Plaintiff does not enjoy full health and that his lifestyle and activities are affected by his ailments to some degree. The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Plaintiff's arguments to the contrary, though couched in several guises, arise largely from Plaintiff's disagreement with the ALJ's factual findings as to the seriousness of his symptoms. That type of fact finding is the essential role of the ALJ. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on March 9, 2010.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record